```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
                                     :
WILLIE A. HECKSTALL, III,            :
                                     :
                    Plaintiff,       :   19cv3566 (DLC)
                                     :
              -v-                    :   OPINION AND
                                     :      ORDER
METROPOLITAN TRANSPORTATION          :
AUTHORITY,                           :
                                     :
                    Defendant.       :
                                     :
------------------------------------ X
```

APPEARANCES

For plaintiff Willie A. Heckstall, III:

Alan Edward Wolin
Wolin & Wolin
420 Jericho Turnpike, Suite 215
Jericho, NY 11753

For defendant Metropolitan Transportation Authority:

Alison Leigh MacGregor
Brian Isaac Confino
Metropolitan Transportation Authority
2 Broadway New York, NY 10004

DENISE COTE, District Judge:

   Willie A. Heckstall, III ("Heckstall"), a police officer with the Metropolitan Transportation Authority ("MTA"), contends that the MTA engaged in race discrimination and retaliation when it failed to promote him to sergeant in 2018, based on his results in a 2014 examination. Instead, the MTA made promotions in 2018 from its 2018 sergeant's examination, which Heckstall

did not take. The MTA has moved for summary judgment. For the reasons stated below, the defendant's motion for summary judgment is granted.

## Background

The MTA maintains its own police department, the Metropolitan Transportation Authority Police Department ("MTAPD"). In January 2006, the MTAPD hired Heckstall, an African-American man, as a police officer.

On May 18 2006, the MTA terminated Heckstall's employment. In 2007, Heckstall filed a lawsuit against the MTA in New York state court, alleging that his termination was racially discriminatory. On February 16, 2010, the parties executed a settlement agreement that resolved Heckstall's 2007 racial discrimination claim. Pursuant to that agreement, Heckstall was reinstated as a police officer with the MTA on February 10, 2010.

The MTAPD provides a written multiple-choice examination ("Exam") for MTAPD officers who wish to be promoted to the rank of sergeant. Police officers who have been employed with the MTAPD for three years or more are eligible to sit for the Exam. The Exam is prepared and scored by a third-party vendor. The results are used to generate a list of candidates, ranked in order of their test scores, who are eligible to be promoted to

the rank of sergeant (the "List").  An Exam is generally given every three to four years.  The most recent Exams were given in 2000, 2003, 2007, 2014, and 2018.  The process that results in the creation of a new List can take up to two years.

In promoting officers to sergeant, the MTAPD strictly follows the List; all promotions to sergeant are made in order of the rankings on the List.  Because it is more efficient to train and hold promotion ceremonies for multiple sergeants at one time, several officers are usually promoted at a time.  Promotions are generally made once or twice a year and are published to the entire MTAPD through Personnel Orders.

The issuance of a List extinguishes the previous List; all promotions are made from the newest List.  In the past twenty years, the MTAPD has never exhausted a List.  In other words, it has never hired every candidate on a List.

On March 28, 2014, the MTAPD announced that the 2014 Exam would take place on June 29, 2014.  Heckstall took the Exam.  On October 17, 2014, the MTAPD issued the 2014 List.  Heckstall ranked 63rd out of 105 on the List.  Of the 105, 14 were African-American (13.3%).

Between October 2014 and December 2017, the MTAPD issued seven different Personnel Orders, promoting in order the candidates ranked 1st through 62nd on the 2014 List.  In total,

3

7 of the 14 African-Americans on the 2014 List (50.0%) were promoted to the rank of sergeant.

The final group of candidates to be promoted off the 2014 List were promoted in a Personnel Order dated December 22, 2017. This group consisted of 11 candidates, 2 of whom were African-American.  A third African-American candidate would have been included in that group, but he had left the MTAPD by the time that Personnel Order was issued.

In May 2016, the MTAPD began the process for creating a new Exam and List.  On November 6, 2017, the MTAPD announced that an Exam would be held on February 4, 2018.  The third-party vendor provided the MTAPD with the 2018 List on May 23, and the MTAPD published that List on June 4.[1]

The first promotions off of the 2018 List were made on September 24, 2018.  In a single Personnel Order, the MTA promoted the top 8 candidates on the 2018 List to sergeant.  Of these 8 candidates, 1 was African-American.

Heckstall did not sit for the 2018 Exam or any make-up exam thereafter.  As a result, he was not on the 2018 List. Heckstall was not promoted to sergeant.  He continues to work for the MTA as a police officer.

---

[1] The vendor estimated on July 18, 2017 that the List would be ready in February or March 2018.

Heckstall filed a claim with the federal Equal Employment Opportunity Commission alleging that the defendant discriminated against him on account of his race and in reprisal for his prior protected activity.  On February 8, 2019, the EEOC issued Heckstall a Notice of Right to Sue.

On April 23, 2019, Heckstall filed this action, complaining that the MTA discriminated against him when it failed to promote him in 2018 to the rank of sergeant.  He brings federal claims pursuant to Title VII and state law claims.  On September 25, 2020, following the completion of discovery, the defendant moved for summary judgment.  That motion became fully submitted on December 11.  The federal claims are addressed below; the Court declines to exercise supplemental jurisdiction over the state law claims.

## Discussion

Summary judgment may not be granted unless all of the submissions taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Summary judgment is appropriate when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Smith v. Cty. of Suffolk, 776 F.3d 114, 121 (2d Cir. 2015) (citation omitted).  "Where, as here, the party opposing

summary judgment bears the burden of proof at trial, summary judgment should be granted if the moving party can point to an absence of evidence to support an essential element of the nonmoving party's claim." Gemmink v. Jay Peak Inc., 807 F.3d 46, 48 (2d Cir. 2015) (citation omitted). In making this determination, a court must "draw[] all inferences in favor of the nonmoving party." Id.

Once the moving party has asserted facts demonstrating that the non-movant's claims cannot be sustained, the opposing party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." Id. "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading; rather his response, by affidavits or otherwise as provided in the Rule, must set forth specific facts demonstrating that there is a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (citation omitted). "[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment." Ridinger v. Dow Jones & Co. Inc., 651 F.3d 309, 317 (2d Cir. 2011) (citation omitted). Only disputes over material facts preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "An issue of fact is genuine and material if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).

The plaintiff's federal claims, brought pursuant to Title VII of the Civil Rights Act of 1964, are for intentional and disparate impact race discrimination and retaliation for protected activity. Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII discrimination claims "may be proven under a disparate treatment or disparate impact theory of liability." Legg v. Ulster Cty., 820 F.3d 67, 72 (2d Cir. 2016).

I. Disparate Treatment

Under Title VII, intentional discrimination is known as "disparate treatment" discrimination. Mandala v. NTT Data, Inc., 975 F.3d 202, 207 (2d Cir. 2020). "Because it is often difficult to obtain direct evidence of discriminatory intent," Title VII disparate treatment claims are evaluated under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Menaker v. Hofstra Univ., 935 F.3d 20, 30 (2d Cir. 2019). The McDonnell-Douglas standard applies to race

7

discrimination actions brought under Title VII.  Kirkland v. Cablevision Sys., 760 F.3d 223, 225 (2d Cir. 2014).

To prove a prima facie case of disparate treatment discrimination under the McDonnell-Douglas standard, a plaintiff "must adduce sufficient evidence to permit a reasonable jury to find that (1) [he] is a member of a protected class, (2) [he] was qualified for the job at issue, (3) [he] was subjected to an adverse employment action, and (4) the circumstances of that adverse action give rise to an inference of discrimination based on [his] class membership."  Bentley v. AutoZoners, LLC, 935 F.3d 76, 88 (2d Cir. 2019).  If a prima facie showing is made, "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action."  Id. (citation omitted).  Finally, "if the employer carries that burden, a plaintiff must submit admissible evidence from which a finder of fact could infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination."  Menaker v. Hofstra Univ., 935 F.3d 20, 30 (2d Cir. 2019).

Heckstall has met his burden of showing three of the four elements of a prima facie case of intentional discrimination.  His race places him in a protected class.  He suffered an adverse action when he was not promoted to sergeant and he was

qualified for that promotion to the extent of having taken the Exam and being placed on the 2014 List.  Heckstall has not met his burden, however, of showing that the failure to promote him in 2018 occurred under circumstances giving rise to an inference of discrimination.

The MTA has a long-established practice of promoting officers to sergeant based on Exam results.  The promotions are made from the most recent List and are made in order of Exam results, as determined by a third-party vendor.  The process to create the 2018 List began in May 2016, long before Heckstall was in contention for a promotion.  On November 6, 2017, the MTA announced that the 2018 Exam would be given.  On December 22, 2017, the final round of promotions was made from the 2014 List.  The 2018 Exam took place on February 4, 2018.  Heckstall, who had taken the 2014 Exam, did not take the 2018 Exam.  The 2018 List was issued on June 4, and all promotions thereafter were made from the 2018 List.  Because Heckstall was not on the 2018 List, the MTA did not consider him for promotion after the 2018 List was published.

This timeline and these well-established practices do not give rise to an inference of discrimination.  Heckstall alleges that the MTA "manipulate[ed] the promotional lists to avoid having a fair share of African-American Police Officers become

9

Sergeants," but he has produced no evidence to support that claim. He has not for instance, produced evidence that the MTA departed from its regular practices in order to restrict African-American candidates from advancing to the rank of sergeant. Heckstall has not met his burden to establish a prima facie case of race discrimination under the McDonnell-Douglas framework.

Even if he had met that burden, the MTA has shown that it had a legitimate, non-discriminatory reason for not promoting the plaintiff to sergeant. Although he was on the 2014 List, his ranking on that List did not qualify him for the last round of promotions made from that List. He did not take the 2018 Exam and therefore was not on the 2018 List and eligible for promotion when the MTA made its next round of promotions. The plaintiff has not offered any evidence to raise a question of fact that the failure to promote him was due in whole or in part to intentional discrimination against him based on his race.

Heckstall principally makes two arguments in opposition to the defendants' motion for summary judgment. He does not, however, offer any evidence, either direct or circumstantial, that anyone in the MTA acted with animus against him.

First, Heckstall points to the composition of the 2014 List. He contends that most African-American candidates "were

10

in the lower half" and that the MTA stopped using the 2014 List just before several African-American candidates would have been eligible for promotion. Heckstall has denied, however, that he intends through this lawsuit to attack either the fairness of the Exam or the ranking of individuals based on their Exam results. He has certainly offered no evidence of any bias in either the creation of the Exam or the scoring of the Exam results. Moreover, he has offered no evidence from which a jury could conclude that the MTA should have broken with its well-established practice and used the 2014 List for promotions after the 2018 Exam had been given, much less that it acted with discriminatory intent in not doing so.

Next, Heckstall argues that African-Americans are underrepresented in the ranks of MTA sergeants. Even on the assumption that this is so, Heckstall has not offered evidence that the failure to promote him was due to intentional race discrimination against him. As already noted, he does not challenge the fairness of the Exam and has not shown that the practice of promoting from the most recent List is discriminatory or intended to be discriminatory.

II. Disparate Impact

Heckstall also claims that the MTAPD should be held liable for Title VII race discrimination under a disparate impact

theory of liability.  The Supreme Court has construed Title VII to prohibit "'not only overt discrimination but also practices that are fair in form, but discriminatory in operation' -- that is, practices that have a 'disparate impact.'"  Mandala v. NTT Data, Inc., 975 F.3d 202, 207 (2d Cir. 2020) (quoting Griggs v. Duke Power Co., 401 U.S. 424, 431 (1971)).

Disparate impact claims "follow a three-part analysis involving shifting evidentiary burdens."  Id.  The plaintiff "bears the initial burden of [making] a prima facie showing of disparate impact."  Id.  In order to make such a showing, the plaintiff must "(1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two."  Id.

Disparate impact claims differ from disparate treatment claims in that they "do[] not require the plaintiff to show that the defendant intended to discriminate against a particular group."  Id.  Rather, "a prima facie violation may be established by statistical evidence showing that an employment practice has the effect of denying members of a protected class equal access to employment opportunities."  M.O.C.H.A. Soc'y, Inc. v. City of Buffalo, 689 F.3d 263, 273 (2d Cir. 2012).  "At the prima facie stage, a plaintiff's statistical analysis must [demonstrate] that the disparity is substantial or significant,

12

and must be of a kind and degree sufficient to reveal a causal relationship between the challenged practice and the disparity." Mandala, 975 F.3d at 209. "[T]he statistical analysis must, at the very least, focus on the disparity between appropriate comparator groups. In other words, the statistical analysis must reveal disparities between populations that are relevant to the claim the plaintiff seeks to prove." Id. at 210.

If the plaintiff successfully makes out a prima facie claim, "the defendant has two avenues of rebuttal." Id. at 208 (citation omitted). If the defendant "undermine[s] the plaintiff's disparate impact or causal analysis," then the defendant prevails. Id. "Alternatively, the defendant can concede that the identified policy has a disparate impact, but nevertheless defend it as 'job related for the position in question and consistent with business necessity.'" Id. (quoting 42 U.S.C. § 2000e-2(k)(1)(A)(i)). If the defendant successfully demonstrates the "business necessity of the challenged policy," "the burden then shifts back to the plaintiff, who has one last chance to prove [his] case" by showing that "other methods exist to further the defendant's legitimate business interest without a similarly undesirable . . . effect." Id. (citation omitted).

In his complaint, Heckstall identified the challenged practice as the "manipulat[ion]" of the promotional lists to

13

avoid having a fair share of African-American officers become Sergeants. At his deposition, he clarified that the challenged practice was the MTA's decision "to switch" from the 2014 List to the 2018 List in making promotion decisions in 2018. Heckstall denied that his disparate impact claim was addressed to either the creation or grading of the Exams or the use of the Exams to make a List from which promotions are made.

Heckstall has not met his burden of establishing a prima facie claim of disparate impact discrimination. He has not demonstrated that the MTA's practice of using the most current List for promotion had a disparate impact generally or that it had one in 2018. Nor has he offered evidence that the practice of using the most current List for promotions has caused any disparity. To make such a showing he would have to challenge either the Exam or the Lists as having a disparate impact, and he has challenged neither.

Even if Heckstall had established a prima facie case of disparate impact, he has failed to respond to the MTA's reasons for using the most current List for promotions. The MTA denies that there is any disparate impact from its use of the most current List for promotions. Nonetheless, it has also explained that its use of the most current List is rooted in fairness to the entire candidate pool. Since it takes a period of about two

years to produce a new List from an Exam, and since the Exams are only given on average every three or four years, the MTA has chosen to promote those from the most current List.  Heckstall has not engaged with the merits of this race-neutral business decision.

Heckstall's discussions of the ranking of African-Americans candidates on the 2014 or 2018 Lists is inapposite to the disparate impact claim he has formulated.  The rankings on the Lists might be relevant if he were challenging the validity of the Exam or the process through which the Exam results were graded, but he is not.

Recognizing the difficulties he faces with his formulation of a disparate impact claim, in his opposition brief Heckstall recasts the claim as a challenge to the "practice of rank ordering the promotion list based upon the scores on the written exam only."  Heckstall did not identify this as his claim at any prior point in this litigation and cannot alter his claim to this extent at this late stage of the litigation.  Discovery has closed, and Heckstall denied at his deposition that he was challenging the use of the Lists, generated from Exam results, for promotion decisions.

III. Retaliation

Heckstall has also brought a claim of retaliation in violation of Title VII.  Title VII makes it unlawful for an employer "to discriminate against any employee or applicant because that individual opposed any practice made unlawful by Title VII or made a charge, testified, assisted, or participated in a Title VII investigation or proceeding."  Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010) (citation omitted).  Like discrimination claims, Title VII retaliation claims are analyzed under the McDonnell-Douglas burden-shifting standard.  Summa v. Hofstra Univ., 708 F.3d 115, 125 (2d Cir. 2013).

In order to defeat a motion for summary judgment on a Title VII retaliation claim, an employee must first establish a prima facie case of retaliation by showing that "(1) he was engaged in protected activity, (2) the employer was aware of that activity, (3) the employee suffered a materially adverse action, and (4) there was a causal connection between the protected activity and that adverse action."  Agosto v. New York City Dep't of Educ., 982 F.3d 86, 104 (2d Cir. 2020) (citation omitted).  "[F]or purposes of a prima facie case, a plaintiff may rely on 'general corporate knowledge' of [his] protected activity to establish the knowledge prong of the prima facie case."  Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 844 (2d Cir. 2013).

16

"Title VII retaliation claims must be proved according to traditional principles of but-for causation, which requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 845 (2d Cir. 2013) (citation omitted). "However, the but-for causation standard does not alter the plaintiff's ability to demonstrate causation at the prima facie stage on summary judgment or at trial indirectly through temporal proximity." Id. "[E]ven without direct evidence of causation, a plaintiff can indirectly establish a causal connection to support a . . . retaliation claim by showing that the protected activity was closely followed in time by the adverse [employment] action." Id.

Heckstall can establish the first three elements of his prima facie claim of retaliation. Heckstall engaged in protected activity when he filed a lawsuit against the MTA in 2007 alleging that it had engaged in race discrimination. Heckstall suffered an adverse employment action when the 2018 List was issued and he was not promoted to the rank of sergeant.

As with his disparate treatment and disparate impact claims, however, Heckstall has produced no evidence from which a reasonable jury could conclude that the MTA's decision to issue the 2018 List was causally connected in any way to his 2007

17

lawsuit or to the 2010 settlement of that lawsuit and his reinstatement as an MTA officer.  Eight years elapsed between the settlement of Heckstall's earlier lawsuit and the issuance of the 2018 List.  This long interval bars Heckstall from relying on temporal proximity to show causation and he has offered no other evidence of causation.  Having failed to demonstrate causation, Heckstall cannot make out a prima facie claim of retaliation under Title VII.

IV.  Supplemental Jurisdiction

Heckstall also brings a number of state law employment discrimination claims.  A district court may decline to exercise supplemental jurisdiction over a state law claim if the district court "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Once a court has dismissed all federal claims, it must decide whether "the traditional values of judicial economy, convenience, fairness, and comity" counsel against the exercise of supplemental jurisdiction.  Catzin v. Thank You & Good Luck Corp., 899 F.3d 77, 85 (2d Cir. 2018) (citation omitted).

> In weighing these factors, the district court is aided
> by the Supreme Court's additional guidance in
> [Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343
> (1988),] that in the usual case in which all federal-
> law claims are eliminated before trial, the balance of
> factors will point toward declining to exercise
> jurisdiction over the remaining state-law claims.

Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006).

The federal claims in this matter have all been resolved, and judicial economy and comity therefore weigh in favor of the dismissal of this action. The defendant has urged the Court not to exercise supplemental jurisdiction over the plaintiff's state law claims, and the plaintiff has not argued to the contrary. Accordingly, the Court declines to exercise supplemental jurisdiction over the plaintiff's state law claims.

## Conclusion

The defendant's September 25, 2020 motion for summary judgment on the plaintiff's Title VII claims is granted. The Court declines to exercise supplemental jurisdiction over the state law claims. The Clerk of Court is directed to enter judgment for the defendant on the complaint's federal claims and close the case.

Dated:   New York, New York
         April 1, 2021

_____
DENISE COTE
United States District Judge